IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAUNCEY ANTONIO HILL, | * | |
| Petitioner | * | |
| v | * | Civil Action No. PJM-12-2386 |
| GREGG HERSHBERGER, et al. | * | |
| Respondents | * | |

***

# MEMORANDUM OPINION

A Response to the above-captioned Petition for Writ of Habeas Corpus, along with exhibits and Petitioner's Traverse, were filed in the above-captioned case. The matter is now ready for dispositive review. The Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

## Background

On October 2-3, 2007, Petitioner Chauncey Antonio Hill ("Hill") was tried before a jury in the Circuit Court for Anne Arundel County on charges of child abuse, second-degree rape, and related offenses. ECF No. 9, Exs. 1, 2 & 5. At trial, the State established the following facts:

> In January of 2004, Latasha Jones, a thirty-four year old adult, filed a report with the Annapolis Police Department ("APD") alleging that her stepfather, Chauncey Hill, sexually abused her twenty years earlier. In response to Jones's report, Detective Jessica Hertik telephoned Hill at his residence in Virginia. Hill returned the detective's phone call from England. During the multiple phone conversations with Hill, Hill denied Jones's allegations and claimed that it was Jones who had initiated contact. Hill also indicated that he would not be returning to Virginia until June 2004. When Detective Hertik called Hill's residence in Virginia in June of 2004, Hill did not answer, and instead called back from England claiming that he would not return until July 15 when his passport expired. Detective Hertik suspended her

investigation until Hill returned to the United States.

Jones testified that Hill married her mother when she was nine or ten and began living with their family. She considered Hill to be a "day-to-day father." Due to scoliosis, Jones was in a body cast during a period of her youth; the cast was removed when Jones was eleven. Shortly afterwards, around age 12, Hill began molesting her. Hill began fondling her breasts and vagina and progressed to putting his fingers inside of her vagina. This progressed to Hill putting his penis on her naked back, hands, and knees. Finally, Hill began vaginal intercourse with the underaged Jones. Jones testified that the sexual encounters occurred "like weekly" whenever Hill would (1) tell her that she was in trouble and had to stay up at night or (2) simply walk into her room at night and wake her in order to have sex. The molestings occurred at night in the living room while everyone else in the house slept.

When Jones was thirteen, she became pregnant. She gave birth to a baby girl, Tasia Hill, when she was fourteen, and testified she had no doubt in her mind that "Chauncey" (Hill) was the father of Tasia. Jones admitted that she was scared of Hill because he would repeatedly tell her that Jones's mother would never believe that he was Tasia's father. Hill would also threaten to take Tasia from her if she told. Accordingly, Jones would lie and say that Tasia's father was "a boy from school." Hill continued sexual relations with Jones after the birth of Tasia, having Jones perform oral sex on him until she was put on birth control by her mother; then the sexual intercourse resumed. Hill would tell Jones that the abuse would stop when she turned sixteen, but he continued abusing her to age twenty. Jones also testified that she was not allowed to date, have boyfriends, receive phone calls from boys, or go out at night up to age sixteen.

At age eighteen, Jones tried to move away to Virginia "to go to school," but Hill and her mother followed her and stayed in Virginia. Jones later married and in 1992, first told her husband of Hill's sexual abuse. She asserted that she wanted to keep her abuse "a secret" until being inspired to report it in 2004, after witnessing a child at a mental health facility come forward about her own abuse.

After Hill's return from England in July 2004, Detective Hertik contacted a detective with Chesapeake, Virginia police department, David Brechtel, and arranged for a search warrant to obtain a buccal swab from Hill. Detective Brechtel secured a search warrant on September 6, 2004 and served it on Hill the same day. He went to Hill's last known address and Hill's mother answered the door. A man came downstairs after Hill's mother called for him and identified himself as "Chauncey." As Detective Hertik testified, Detective Brechtel had previously been supplied with Hill's identifying information including height, weight, race, age, hair and eye color, and full

name. Detective Brechtel testified that he followed all of the standard procedures in administering the buccal swab of Hill – using gloves, putting the cotton swabs into the designated box, sealing the box with evidence tape, putting the box into the designated evidence envelope, and initialing and dating the envelope. The envelope was then submitted into the evidence closet until Detective Brechtel handed it to Detective Hertik four days later. Detective Hertik met Detective Brechtel at the Chesapeake Police Department and personally took custody of the buccal swabs. The next day, September 11, 2004, Detective Hertik placed the Hill's buccal swab into the APD's evidence locker. From September 10th to the 11th the buccal swabs remained at Detective Hertik's satellite police office at the naval station because she "hadn't gone back to the police station."

Two weeks after Hill's buccal swab was administered, Detective Hertik personally administered Latasha Jones's buccal swab before putting it into evidence. He testified that he followed all of the Maryland State Police procedures when swabbing Jones including the proper packaging techniques and writing down the chain of custody.

At the direction of Detective Hertik, Benjamin Lee, a crime lab specialist with the APD, administered the swabbing of Tasia Hill on July 29, 2004. Though Technician Lee did not specifically ask the woman (whom he swabbed) her identity, the woman identified herself to Detective Hertik as Tasia Hill before she was swabbed. Detective Hertik testified that she was present when the buccal test was taken. The detective's report erroneously indicated that the date of Tasia's buccal test was July 28th, not the actual date of July 29th. Detective Hertik acknowledged that she mistakenly "may have just mismarked the date on my report."

On September 15, 2004, Technician Lee checked Mr. Hill's swab out of evidence for the likely purposes of making sure "it was properly packaged and everything and sealed, because the labs won't take it unless it's sealed." He continued, "That's the only reason I know I would take it out, would be to check the package and make sure it's properly sealed." On September 30, 2004, after retrieving the three sets of buccal swabs from the evidence room, Technician Lee transported the evidence to BRT Laboratories in Baltimore.

At BRT, the samples were "hand-carried and brought" to Danielle Sewell, the quality assurance manager at the lab. After being qualified as an expert witness, Sewell testified that each sample is given a unique bar code, "and then the samples are put in our case folder, which is labeled. And then it's sealed with evidence tape and then initialed and dated by myself." The DNA samples were subjected to a system of checks and balances in an uncontaminated environment to "verify the profiles that are generated from the testing." Before testing the DNA samples, Sewell had checked the samples out of evidence on October 20, 2004, but could not remember why.

> BRT Laboratories' Director of Molecular Technology, Francis Chiafari, and the medical director reviewed the test results. As an expert witness, Chiafari testified that "it was not possible to exclude Chauncey Antonio Hill from being the biological father of Tasia Yanica Hill." He continued, "the odds ratio was 832 to 1, which means that it's 832 times more likely or more probable that Mr. Hill is the biological father versus another individual of the same ethnic background." Mr. Chiafari determined the paternity probability to be 99.88%. When asked for his expert opinion as to the paternity of Tasia Hill, Chiafari testified that: "Given the verbal predicates first described by Hummels in the 1970s, you would have to say that Tasia Yanica Hill is practically proven to be the biological child of Chauncey Antonio Hill."
>
> After getting the results of the paternity test back in November 2004, Detective Hertik filed charges against Hill and had a warrant issued for his arrest. Hill voluntarily turned himself into the police department on February 13, 2007.

*Id.*, Ex. 3.

Based on the evidence produced at trial, the jury returned a guilty verdict on charges of child abuse, second-degree rape and third-degree sexual offense. *Id.*, Exs. 1, 2 & 5. Hill was sentenced to serve 15 years in prison for child abuse, a consecutive 10 year term for second-degree rape, and a consecutive five year term for third-degree sexual offense. *Id.*

Hill appealed the verdict to the Court of Special Appeals of Maryland wherein he raised one issue: "Whether the trial court erred by admitting unreliable DNA evidence and the expert testimony founded on it where the chain of custody was incomplete and where witnesses were unable to testify regarding the condition of the evidence." *Id.*, Ex. 2. The Court of Special Appeals, in an unreported opinion, rejected Hill's claim and affirmed his convictions. *Id.,* Ex. 5

Hill then filed a self- represented Petition for Writ of Certiorari in the Court of Appeals of Maryland, seeking review of the intermediate appellate court's judgment. *Id.*, Ex. 6. The Court of Appeals denied the petition on November 13, 2009. *Id.*, Ex. 7. He did not seek further review in the Supreme Court, making his conviction final on February 11, 2010, when the time for

seeking review expired. *See* Sup. Ct. Rule 13.1. Hill's motion for modification of sentence, and motions to correct illegal sentences were denied. *Id*. Ex. 1 & 11.

Hill initiated post-conviction proceedings on July 26, 2010. As litigated and construed by the post- conviction court, Hill raised sixteen claims of ineffective assistance of counsel. *Id*., Ex. 8. Post-conviction relief was denied on May 31, 2011. Hill filed an application for leave to appeal the denial of post-conviction relief which was summarily denied on July 31, 2012; the court's mandate issued on August 31, 2012. *Id*., Exs. 8-10.

In the Petition for Writ of Habeas Corpus filed with this Court, Hill alleges his trial counsel was ineffective for (1) failing to object to the warrant or move to suppress the DNA evidence recovered from him; and (2) failing to raise the issue of merger at sentencing. Hill maintains that his appellate counsel was ineffective for failing to raise the merger issue on direct appeal. He also claims that his sentence is illegal. ECF No. 1.

**Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011); *Harrington v. Richter*, 562 U.S_, ___131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S.290, ___, 130 S.Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. **"**[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.*" Renico v. Lett,* 599 U.S 766, ___, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

6

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

**Analysis**

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e) (1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that new § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant

7

relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

Hill claims trial counsel was ineffective for failing to object to the warrant or move to suppress DNA evidence recovered from him. ECF No. 1. The post-conviction court considered and denied this same allegation, finding, in pertinent part:

> Petitioner argues that the proper foundation for the warrant was not laid, since the signature was illegible, and since the magistrate who signed the warrant in 2004, was demoted in 2005. Also, Petitioner argues that the arrest warrant was improper since the DNA was not sufficient probable cause for a warrant. Defense Counsel was very clear during the hearing that it was deliberate trial tactic not to raise issues with the warrant prior to trial, as it could alert the State to any possible defects in the chain of custody. The Court finds that trial tactic to be a good one, and finds that Defense Counsel's actions were neither objectively unreasonable, nor was there any prejudice to the Petitioner as a result. Additionally, the Court finds this argument is not supported by the facts, as the Virginia warrant was not defective. While there were some inconsistencies with the gathering of the buccal swabs, the reliability of which Defense Counsel raised at trial, the warrant was still a proper and valid warrant. There is no evidence that the magistrate who signed the warrant was not a proper magistrate and there is no evidence suggesting the probable cause was insufficient.
>
> Finding no deficient performance or error by trial counsel and finding no prejudice to the Petitioner the Court will not grant the relief requested by the Petitioner.

ECF No. 9, Ex.8, p. 18-19.

The post-conviction court also found that trial counsel was not ineffective as she objected to both the chain of custody, foundation, and reliability of the DNA evidence. *Id*., p. 15 & 19. The findings of facts are supported by the record which further demonstrates that trial counsel discussed at length with Petitioner how to confront the DNA evidence. Trial counsel testified that she decided against challenging the DNA evidence pretrial as it would have alerted the State to deficiencies which could then have been corrected prior to trial. Trial counsel, with

Petitioner's approval, challenged the admission of the DNA evidence at the time it was introduced at trial. The post-conviction court found such a strategy reasonable, even though it ultimately was unsuccessful. Further, trial counsel testified that she "did not see any problem with the Virginia warrant" (ECF No. 21, Ex. 19, p. 67-68) and Petitioner has failed to carry his burden to demonstrate that the warrant was deficient. Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson,* 881 F.2d 117, 125 (4th Cir. 1989) Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. 28 U.S.C. § 2254(d). *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing."). Moreover, the post-conviction court's analysis of Hill's ineffective assistance of counsel claim represents a reasonable application of existing law and the court's findings of facts are presumed correct. *See* 28 U.S.C. 2254(e). In short, Petitioner has failed to present a meritorious claim for federal habeas relief with respect to this claim.

Petitioner next claims that trial and appellate counsel failed to raise the issue of merger of sentences. ECF No. 1. Claims alleging ineffective assistance of appellate counsel are also analyzed under the *Strickland* standard. *See Smith v. Robins*, 528 U.S. 259, 285 (2000).

The post-conviction court found as follows:

Petitioner alleges that his crime occurred between the years of 1981 and 1986, that he should not have been sentenced separately for each of his convictions (2nd degree rape, 3rd degree sex offense, and child abuse), and the sentences should have merged. *See Nightengale v. State*, 312 Md. 699 (1988).

The Court finds that Defense Counsel was not ineffective for failing to

9

> object to Petitioner's consecutive sentences. The Legislature clarified with the passage of Crim Law Art. § 6-301 and § 6-302 in 1990 that sentences imposed under the child abuse sections may be separate from and consecutive to any sentence imposed for a crime based on the underlying act establishing the violation of that section. The Legislature therefore specifically overruled the outcome in *Nightengale*.
>
> The Court finds that there was no prejudice when Defense Counsel failed to object to his sentence. The law in both 1986 and 2007 allowed for imposition of a fifteen (15) year sentence for child abuse, a twenty (20) year sentence for second degree rape, and a ten (10) year sentence for third degree sex offense. The law in both 1986 and in 2007 allowed for the Court to utilize its discretion in determining whether those sentences should run consecutively. As the Petitioner could have received the exact same sentence in 1986, as he did in 2007, the Court finds that Defense Counsel's failure to object to the sentences did not result in any prejudice to the Petitioner.
>
> The Petitioner also filed a Motion to Correct an Illegal Sentence, which Judge North denied. Subsequently the Petitioner did appeal to both the Court of Special Appeals and the Court of Appeals. The Court of Special Appeals declined to grant a review and the Court of Appeals, denied his (Petitioner's) Petition for Writ of Certiorari. As such, this Court finds that the allegation has been finally litigated.
>
> Finding no deficient performance or error by trial counsel and finding no prejudice to the Petitioner the Court will not grant the relief requested by the Petitioner.

ECF No. 9, Ex. 8, p. 17-18.

Petitioner's entire claim regarding merger of his sentence turns on the post-conviction court's ruling as it pertains to Maryland law and Maryland sentencing provisions in criminal cases. It is not the role of this Court to second guess those conclusions. *See Rose v. Hodges* 423 U.S. 19, 21– 22 (1975); s*ee also Estelle v. McGuire*, 503 U.S. 62, 67- 68 (1991) ) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") The Court notes that there is no federal constitutional right to merger of convictions for the purpose of sentencing.

*See Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993). Thus the issue of whether the convictions should have merged is exclusively a State law matter, and is not cognizable in a federal habeas corpus proceeding. Moreover, the likelihood of success either at sentencing or on appeal with regard to the issue of merger was minuscule, and counsel was not required to raise such an issue at the expense of burying good arguments.[1] *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983).

Lastly, Petitioner alleges his sentence violates the Eighth Amendment. ECF No. 1. To the extent Petitioner restates his claim regarding merger, the claim fails. As demonstrated, Petitioner was not entitled to merger of his sentences.

Stated as a separate Eighth Amendment claim, he is likewise entitled to no relief. The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). In *Ewing v. California*, 538 U.S. 11, 22-24 (2003), the Supreme Court held: "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sanctions that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 22-23. The Fourth Circuit has held that proportionality review is not available for any sentence less than life imprisonment without the

---

[1] A review of the record demonstrates that the trial court properly imposed separate sentences for Petitioner's convictions of child abuse, second-degree rape and third-degree sexual offense pursuant to the laws as they existed at the time of Petitioner's criminal conduct. The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission. *See* U.S. Const. art I, § 9; *Collins v. Youngblood,* 497 U.S. 37, 43-43 (1990). It assures that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28-9 (1981). The record demonstrates that Petitioner received no more of a term of incarceration than that which he could have received at the time he committed the offenses. The state court's ruling survives scrutiny under 28 U.S.C. § 2254(d).

11

possibility of parole. *See United States v. Ming Hong*, 242 F.3d 528, 532 (4th Cir. 2001). Petitioner received a total 30 year term of imprisonment and is eligible for parole.

Petitioner's separate sentences were within statutory and constitutional limits. The fact that the his sentences were ordered to be served consecutively does not establish an Eighth Amendment violation. *See United States v. Ming Hong*, 242 F.3d at 532 (holding that Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence). The sentencing court fashioned a sentence appropriate to Petitioner's crimes. Each consecutive sentence was based upon a separate crime of sexual misconduct against a child. Neither individually, nor taken together, was the sentence disproportionate. To the contrary, the court's sentence was a proportionate response to the gravity of the crimes. Relief pursuant to 28 U.S.C. § 2254(d) is unwarranted.

**Conclusion**

The record establishes, and this Court determines, that Hill is not entitled to federal habeas relief. There is no basis upon which to find constitutional deficiencies in the state court proceedings, and Hill has failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for post-conviction or appellate relief. For the foregoing reasons, Petitioner's Motion for Immediate Release (ECF No. 29) shall be denied.

Additionally, a Certificate of Appealability is not warranted. A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a Certificate of Appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2). Accordingly, the Petition shall be dismissed with prejudice and a Certificate of Appealability shall not issue. A separate Order follows.

July 2, 2013

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE